IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| Teresa H. )<br>    Plaintiff, )<br> )<br>v. )<br> )<br>Martin O'Malley )<br>Commissioner of Social Security, )<br>    Defendant. ) | Case No. 23-03069 |

**REPORT AND RECOMMENDATION**

**KAREN L. McNAUGHT, United States Magistrate Judge:**

Before the undersigned Magistrate Judge, on referral from the District Court, is Plaintiff Teresa H. ("plaintiff")'s action [1] for judicial review brought under §405(g).[1]

In support of the issues [8, 13], plaintiff has filed a brief and seeks remand of the decision of the Administrative Law Judge ("ALJ") denying claims for benefits under the Social Security Act ("Act"). In response [12], defendant, Martin O'Malley ("Commissioner") moves for affirmance of the decision and dismissal of the complaint.

For the reasons stated below, this Court hereby recommends: (1) the ALJ's decision be AFFIRMED; and (2) judgment be entered in favor of the Commissioner.[2]

**I.    BACKGROUND**

On May 12, 2020, plaintiff filed both Title II widow disability insurance benefits ("WIBS") claim and Title XVI social security income ("SSI") claims under the Act—

---

[1] *See* 42 U.S.C. § 405(g) (empowering the court "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.").

[2] References to the pages within the Administrative Record will be identified by R. [page number]. The Administrative Record appears at Docket Entry 7 [Doc. 7].

alleging an onset date of disability of April 13, 2020. (R. 15, 256–71). The WIBs and SSI applications were initially denied by State Disability Determination Services ("DDS") on January 22, 2021, and again upon reconsideration on June 8, 2021. (R. 15, 79–141, 174–76). Plaintiff submitted a written request for a hearing before an ALJ, which was received on August 30, 2021. (*Id*.) A telephonic hearing was held on April 25, 2022, and the ALJ issued an unfavorable decision on July 11, 2022—concluding the plaintiff was "not disabled" for the purposes of her WIBs and SSI claims. (R. 15–34). As the ALJ outlined, the applicable issues to address were narrow in scope:

> The issue is whether the claimant is disabled under sections 223(d), 202(e), and 1614(a)(3)(A) of the Social Security Act. Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.
>
> Other issues are whether the claimant is the widow of the deceased worker, has attained the age of 50, is unmarried (unless one of the exceptions in 20 CFR 404.335(e) apply), and has a disability that began before the end of the prescribed period. The prescribed period ends with the month before the month in which the claimant attains age 60, or, if earlier, either 7 years after the worker's death or 7 years after the widow was last entitled to survivor's benefits, whichever is later.

(R. 16). Uncontroversial in this action, the ALJ first highlights that plaintiff (an unmarried widow of the deceased-insured worker) has attained the minimum age of 50—finding she meets the nondisability requirements for disabled widow's benefits set forth in Section 202(e) of the Act. (R. 18).

Turning to the sequential analysis, at step one, the ALJ found the prescribed period ended on December 31, 2022, and plaintiff has not engaged in substantial gainful activity

since April 13, 2020—the onset date of disability as alleged. (R. 18, *citing* 20 C.F.R. §§ 404.1571; 416.971).

At step two, the ALJ determined plaintiff suffers from the following severe impairments: (1) cerebral vascular accident; (2) congestive heart failure; (3) ischemic heart disease; and (4) cardiomyopathy. (R. 18–22, *citing* 20 C.F.R. §§ 404.1520(c); 416.920(c); SSR 85–28).

At step three, the ALJ determined plaintiff's impairments (whether individually or in combination) did not meet or medically equal the severity of one of the listed impairments under C.F.R. 20 Part 404, Subpart P, Appendix 1. (R. 22–23, *citing* 20 C.F.R. §§ 404.1520(d); 404.1525; 404.1526; 416.920(d); 416.925; 416.926).

Between steps three and four, the ALJ formulated the RFC of the plaintiff—determining the plaintiff is capable of "light work" as defined under the administrative guidance, subject to limited exceptions:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can frequently balance, stoop, kneel, crouch, crawl, and climb ramps and stairs and occasionally climb ladders, ropes, and scaffolds. She can perform work requiring no concentrated exposure to dusts, fumes, noxious odors, and gases.

(R. 23).

In formulating this RFC, the ALJ notes consideration of all symptoms and the extent to which those symptoms could reasonably be accepted as consistent with objective medical evidence and other evidence—inclusive of medical opinions and prior administrative medical findings. (R. 23–32, *citing* 20 C.F.R. §§ 404.1520(c); 404.1529;

416.920(c); 416.929; and SSR 16-3p).

At step four, considering the above RFC formulation, age, education, and vocational expert ("VE") testimony as to past relevant work experience, the ALJ found plaintiff could perform past relevant work as a *Meat Products Laborer* (DOT 529.687–130, SVP 2) (R. 32–33, *citing* C.F.R. §§ 404.1565 and 416.965). In finding the plaintiff capable of performing past relevant work, the ALJ's analysis concluded—affirming the previous DDS administrative findings of "not disabled" for the purposes of the WIBs and SSI claims now on appeal. (R. 33, *citing* 20 C.F.R. §§ 404.1520(f); 416.920(f)). On February 21, 2023, the Appeals Counsel adopted the ALJ's findings. (R. 1-9, *citing* 20 C.F.R. § 416.1481).

## II.  LEGAL STANDARDS

### A. Standard of Review

A claimant who is found to be "not disabled" may challenge the Commissioner's final decision in federal court. Judicial review of an ALJ's decision is governed by 42 U.S.C. § 405(g)—providing "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." The Court's review is, therefore, limited in scope—evaluating only whether the ALJ applied the correct legal standards and whether substantial evidence supports the ALJ's findings. *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011).

Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 587 U.S. 97, 103 (2019), *quoting Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1983). The reviewing court must consider the entire administrative record, but it will

not "re-weigh evidence, resolve conflicts, decide questions of credibility, or substitute our own judgment for that of the Commissioner." *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011). This Court will "conduct a critical review of the evidence" and will not let the Commissioner's decision stand "if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).

The Court will focus on whether the ALJ has articulated "an accurate and logical bridge" from the evidence to the determination. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). At a minimum, the ALJ must "sufficiently articulate his assessment of the evidence to 'assure us that the ALJ considered the important evidence ... [and to enable] us to trace the path of the ALJ's reasoning.'" *Carlson v. Shalala,* 999 F.2d 180, 181 (7th Cir. 1993) (per curiam), *quoting Stephens v. Heckler,* 766 F.2d 284, 287 (7th Cir. 1985) (internal quotations omitted).

This requirement is designed to allow a reviewing court to "assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Scott v. Barnhart,* 297 F.3d 589, 595 (7th Cir. 2002). Thus, even if reasonable minds could differ as to whether the claimant is disabled, courts will affirm a decision if the ALJ's opinion is adequately explained and supported by substantial evidence. *Elder v. Astrue,* 529 F.3d 408, 413 (7th Cir. 2008).

**B. Standard of Proof**

The regulations governing disability determinations under Titles II and XVI of the Act are identical in nearly all respects. *See generally* 20 C.F.R. §§ 404.1501; 416.901

(outlining statutory scope).³ To qualify for benefits under Title II and Title XVI applications, a claimant must be "disabled" under the Act. A person is disabled for this purpose if "he or she has an inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).

In determining whether a claimant is disabled, the ALJ must consider the following five-step inquiry: "(1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, whether he can perform past relevant work, and (5) whether the claimant is capable of performing any work in the national economy." *Dixon,* 270 F.3d at 1176 (listing requirements as set forth under C.F.R. §§ 404.1520 and 416.920).

Although the claimant has the burden of establishing a disability at steps one through four, the burden shifts to the Commissioner at step five to show "the claimant is capable of performing work in the national economy." *Zurawski v. Halter*, 245 F.3d 881, 885–86 (7th Cir. 2001). If the claimant is able to do other work, he is not disabled. If the claimant is not able to do other work and meets the duration requirement, he is disabled. 20 C.F.R. §§ 404.1512, 404.1560(c); 416.912; 416.960(c).

---

³ WIBs and SSI are codified independently, but those relevant to this case are virtually identical. WIBs regulations are found at 20 C.F.R. §§ 404.900-.999 and 20 C.F.R. §§ 404.1500-.1599. The parallel SSI regulations are found at 20 C.F.R. §§ 416.1400-.1499, and 20 C.F.R. §§ 416.900-.999.

### III. ANALYSIS

In briefing outstanding issues on appeal, plaintiff contends the ALJ's RFC determination was not supported by substantial evidence. (Doc. 8 at 6–7). In support of her position, plaintiff asserts the ALJ failed to properly consider all of the evidence in the case record when formulating the RFC; notably, plaintiff suggests the ALJ failed to adequately discuss how she weighed subjective statements as evidence in her RFC determination. (*Id*. at 7–10).

In response, the Commissioner contends the plaintiff has failed to show that she was unable to do her past relevant work and that the disability determination should be affirmed—arguing the ALJ's analysis reasonably relied upon substantial evidence in the case record. (Doc. 12 at 4–11).

In reply, plaintiff reasserts her allegation that the RFC is unsupported—alleging the medical evidence available in the record confirms she has residual weakness on her right side and memory deficits. (Doc. 13 at 1). Further, as the past relevant work at issue is not one-handed as defined under applicable administrative guidelines, plaintiff further contends the ALJ erred in finding her capable of performing the past relevant role. (*Id*. at 1–2).

Upon review of the case record, applicable law, and arguments set forth by the parties, this Court finds good cause to recommend affirming the ALJ's decision. Remand is unwarranted for those reasons set forth below.

**A. The ALJ's well-reasoned RFC formulation is grounded in substantial record evidence**

In challenging the RFC formulation in this case, the ALJ's determination must be "at complete odds with what an ALJ must do to support its decision with substantial evidence, a standard that the Supreme Court has emphasized is light." *Warnell v. O'Malley*, 97 F.4th 1050, 1051 (7th Cir. 2024).

Upon review of the decision and record on appeal, the ALJ grounded the RFC determination in substantial evidence—finding plaintiff could perform light work except she can: *frequently* balance, stoop kneel, crouch crawl, and climb ramps and stairs; *occasionally* climb ladders, ropes, and scaffolds; and perform work requiring *no concentrated exposure to dust, fumes, noxious odors and gases*. (R. 23, *citing* §§ 404.1567(b); 416.967(b)).

In reaching this RFC formulation, the ALJ considered assessed the credibility of the subjective statements of the plaintiff alongside several other categories of evidence— including: (1) prior administrative medical findings; (2) medical evidence and treatment history; and (3) daily activities. (R. 23–32, *citing* 20 C.F.R. §§ 404.1520(c); 404.1529; 416.920(c); 416.929; and SSR 16-3p) (applying requisite two-step evaluation).

   *i.  Prior Administrative Findings*

In formulating the RFC between steps three and four of the sequential analysis, the ALJ properly considered the administrative findings of Dr. Western, Dr. Hudspeth, and Dr. DiFonso as to functional limitations.[4] For example, consistent with controlling

---

[4] As state-agency medical consultants, these doctors are "highly qualified and experts in Social Security disability evaluation." 20 C.F.R. §404.1513a(b)(1); *see also* 20 C.F.R. §404.1527(c)(6) ("the amount of

administrative guidance, Dr. Western found plaintiff could perform the exertional demands of light work and could *frequently* climb ramps and stairs; *occasionally* climb ladders; and *frequently* balance, stoop, kneel, crouch, or crawl. (R. 31–32, 114–16). Dr. Western further recommended avoiding concentrated exposure to fumes, dusts, gases, and poor ventilation. (R. 31–32, 117).

The findings of Dr. Hudspeth and Dr. DiFonso further support the reasonableness of the ALJ's RFC formulation—suggesting the plaintiff had only mild (not severe) mental limitations during the purported period of disability. (R. 32, 86, 112–13). The ALJ may and properly did consider such findings in the RFC formulation—determining that the plaintiff had only mild mental limitations and no severe mental impairment. (R. 1821, *citing* 20 C.F.R. § 404.1520(c) (In other words, plaintiff had no mental condition that "significantly limit[ed]" her "ability to do basic work activities."). Moreover, the findings above were consistent with those made by Dr. Dow at the initial stage of review—concluding that there was insufficient evidence in support of those mental limitations as purported. (R. 85).

Thus, when considered alongside the totality of the record evidence, the prior administrative findings constitute substantial evidence in support of the ALJ's RFC formulation between steps three and four of the sequential evaluation. *See Pavlicek v. Saul*, 994 F.3d 777, 781 (7th Cir. 2021) (affirming an ALJ who gave great weight to reviewing medical assessments); *Felts v. Saul*, 797 F. App'x 266, 269 (7th Cir. 2019) (holding an ALJ

---

understanding of our disability programs and their evidentiary requirements that a medical source has" is a factor in weighing that source's opinion).

can rely upon state-agency psychologists in finding that mental impairments were not severe).

### ii. *Medical Evidence & Treatment Plan*

Despite claims by plaintiff suggesting the ALJ improperly exercised medical judgment in this credibility determination, nothing suggests the ALJ made logical leaps between the objective medical evidence, treatment plans as articulated in the record, and the credibility determinations of self-reported symptoms.

In evaluating objective medical evidence and recorded treatment plans against the credibility of other evidence (such as self-reported symptoms), the ALJ must consider the extent to which such "symptoms can reasonably be accepted as consistent with the objective medical evidence." *See* 20 C.F.R. § 404.1529(a); *see also* C.F.R. 20 § 404.1529(c)(2) ("Objective medical evidence . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms, such as pain, may have on your ability to work."); 20 C.F.R. §§ 404.1529(c)(3)(iv), (v) (affording discretion to ALJ to consider claimant's treatment as one factor when evaluating subjective allegations); SSR 16-3p ("The intensity, persistence, and limiting effects of many symptoms can be clinically observed and recorded in the medical evidence. Examples such as reduced joint motion, muscle spasm, sensory deficit, and motor disruption illustrate findings that may result from, or be associated with, the symptom of pain.").

Here, consistent with the foregoing administrative guidelines, the ALJ acknowledged that plaintiff had acute heart failure followed by a stroke in April 2020,

and that treatment for those conditions required a 15-day hospitalization—occurring in the context of methamphetamine abuse. (R. 26, 373–74). Notably, plaintiff testified that she stopped abusing methamphetamine after experiencing those conditions; the record also indicates further improvement with treatment following the incidence of acute heart failure and stroke. (R. 26–30). However, the physical improvement of plaintiff is most clearly relayed with the benefit of objective medical evidence in the record; further, as to this medical condition and the related treatment plan, plaintiff failed to adequately show her symptoms precluded her from work for a 12-month period, as required by the Social Security Act. 42 U.S.C. §§ 423(d)(1)(A), (2)(A).

In June 2020, two months after her stroke, the record indicates plaintiff experienced elevated blood pressure at the examination, but otherwise presented unremarkable limitations in other physical and vascular metrics—presenting normal hand grip strength, full range of motion, and normal cardiovascular and respiratory observations. (R. 27–28, 1170). Although plaintiff again complained of right-hand pain and swelling at this examination, she once more had normal observations in July 2020—just one month later—including strong and equal hand grips. (R. 27–28, 888–89) ("Bilateral hand grips strong and equal. Full range of motion is present; no visible edema").

Between June and August 2020, plaintiff routinely engaged in physical therapy to treat some decreased strength and coordination. (R. 28, 915–82). At the conclusion of this course of physical therapy, plaintiff reported minimal improvements in grip strength, upper extremity strength, fine motor tasks, and functional activities; however, contrary

to her subjective reports of only marginal improvement, evidence of significant improvement exists in the record. (R. 28, 988–89) ("Range of motion has been grossly assessed and is within normal functional limits"). Specifically, the record indicates plaintiff had full strength except for slightly reduced strength (4+ out of 5) in left and right elbow extension, right shoulder internal rotation, and aspects of right wrist movement, and somewhat reduced strength (3+ out of 5) in other aspects of right wrist and finger movement. (R. 28, 988–89).

Further, during the October 2020 evaluation, the record suggests plaintiff has normal gait, full range of motion, and normal muscle strength and tone, symmetrical reflexes, normal cardiac and respiratory examinations, and no neurological deficits. (R. 29, 1159). In the next month, a physician again made those normal observations, except that he noted some weakness in her (non-dominant) right arm. (R. 29, 1155). Further, in January 2021, two (2) examinations of the plaintiff yielded normal gait and cardiac and respiratory findings; specifically, one of those examinations noted: normal range of motion, normal muscle strength and tone, and normal motor examinations in the upper and lower extremities. (R. 29–30, 1145, 1151). A subsequent examination, conducted in May 2021, also yielded similar findings. (R. 30, 1140).

Later that year, in August 2021, plaintiff was observed to have mild weakness in her right arm and appeared frail, but otherwise normal. (R. 30, 1031). In January 2022, plaintiff reported she was "back to baseline" after her stroke except that she had weakness in her non-dominant right hand. (R. 28, 1179). However, the ALJ determined the evidence in the record did not support her inability to even lift 10 pounds on an

occasional basis—the maximum lifting requirement of past relevant work of the plaintiff. (R. 355). Thus, as to the significance of her purported physical impairments in support of her claims, the ALJ adequately evaluated and articulated the record evidence in support of the RFC as formulated.

Next, as to her alleged mental impairments, the ALJ further considered her treatment records. (R. 20, 32). Consistent with 20 C.F.R. §§ 404.1529(c)(3)(iv-v), the ALJ considered the mental health treatment plan (or lack of) in the record—highlighting that the mental health treatment did not consistent of specialized treatment of psychotherapy. (R. 20, 32). The ALJ considered how these records indicate only that she was prescribed medication from her primary physician. *See Sienkiewicz v. Barnhart*, 409 F.3d 798, 804 (7th Cir. 2005) (affirming a finding of no disability where a claimant "never saw a mental health care specialist about her depression.").

The ALJ did acknowledge mental deficits of the plaintiff upon examination. (R. 19-20, 31, 1012–13). However, despite such deficits, the ALJ also considered how plaintiff was able to repeat sets of numbers in sequential order and count down from the number 20 in specific increments. (*Id.*). The ALJ also considered how plaintiff had normal speech and eye contact, as well as fair insight and judgment. (*Id.*).

The ALJ ultimately found that difficulties on the mental status examination were outliers in the totality of the record. (R. 20). Specifically, at a medical visit after the consultative examination, plaintiff displayed unimpaired recent and remote memory. (R. 20, 1151). For example, plaintiff was observed to answer questions appropriately at several medical visits. (R. 20, 889, 895, 1164, 1170). Further, several mental status

examinations were observed as completely normal. (R. 20, 889, 896, 1139, 1145, 1151, 1155, 1164, 1170).

In challenging the ALJ's reliance upon such findings, plaintiff contends the ALJ neglected to adequately consider the December 2021 medical record listing "Forgetfulness" as one of the thirty-seven (37) items under "Patient Active Problem List" was evidence of a significant mental limitation. (Doc. 8 at 8, *citing* R. 1050). Upon review, however, it appears that problem list appears to have included information from prior medical visits—documenting issues that were not necessarily still present.

For example, the December 2021 medical record did not list any observations of mental deficits, forgetfulness or otherwise. (R. 1051–52). The assessment section of that medical record similarly includes no mental concerns. (R. 1053). Similarly, the record notes "Methamphetamine abuse" on the same list; yet, in the same record (in a different section) also notes that "[n]o recent meth use" was reported. (R. 1049, 1051). Thus, to presume this record was not a reflection of the full scope of the prior treatment would incorrect and inconsistent within itself.

Plaintiff also argues, unpersuasively, that the ALJ erred by not finding significant mental limitations when plaintiff missed her first appointment with a consultative examiner. (Doc. 8 at 8, *citing* R. 94–95). However, the ALJ determination of a missed medical appointment as insufficient to support a finding of mental limitations is reasonable, especially in light of the numerous medical appointments that she did attend. (R. 888-1184). Similarly, although an agency employee at SSA noted the plaintiff struggled to remember dates and information without assistance of her daughter, this

evidence does not itself indicate the ALJ's finding was unreasonable or patently wrong. (Doc. 8 at 8, *citing* R. 282, 1029). Plaintiff has not established how forgetting details on some occasions warrants a finding of significant limitations such that would preclude her from returning to her past relevant work as a *Meat Products Laborer*.

The ALJ cited medical assessments and objective evidence of improvement in support of the finding that plaintiff could return to her past relevant light exertional work, involving simple duties. Nothing in the record suggests the ALJ's findings were unreasonable as to the purported mental impairments of the plaintiff. Plaintiff did not provide sufficient evidence or argument to conclude the ALJ's RFC formulation or disability determination was unreasonable.

In summary, not only was the medical evidence and treatment plan adequately summarized, evaluated, and considered, but the ALJ's articulation of persuasive rationale as to each of the pieces of relevant evidence in the record also support the RFC as formulated. Evidenced in the analysis above, the record does not suggest the ALJ's credibility assessment as to the medical evidence was "patently wrong"—suggesting deference to the ALJ's findings is warranted.

Moreover, even if reasonable minds could disagree on whether the plaintiff was disabled in consideration of the foregoing medical and treatment plan evidence, this Court must affirm the Commissioner's decision to deny benefits. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019); *see also Bakke v. Kijakazi*, 62 F.4th 1061, 1068 (7th Cir. 2023) ("This explicit weighing is precisely within the purview of the ALJ—and it is not [the Court's] place to reweigh evidence, even where reasonable minds might disagree about

the outcome."). This Court will not engage in reweighing evidence as a means to supplant ALJ's discretion with its own. To do so would be improper. *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021)(holding a reviewing court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it.").

Thus, the ALJ reasonably considered the objective medical evidence and treatment plan available in the record when formulating the RFC—affording the ALJ to consider such evidence against the totality of the longitudinal case record inclusive of the subjective reports of the plaintiff.

### iii.    *Daily Activities & Other Factors*

Plaintiff also attacks the ALJ's description of her daily activities. (Doc. 8 at 7–8). For example, the ALJ noted plaintiff could prepare meals. (*Id.*, *citing* R. 21). In response to this reliance, plaintiff contends she is unable to cook and, instead, only admitted she is capable of making sandwiches and preparing TV dinners. (Doc. 8, *citing* R. 298). This suggestion, however, appears adequately rebutted because the testimony also suggests she was capable of preparing meals on a stovetop; specifically, hamburgers and similar meals. (R. 58). This provides the ALJ with enough reasonable ground to find plaintiff capable of preparing meals, even if such meals are basic or rudimentary. Further, the ALJ also found evidence exists in the record from mental status examinations that suggest plaintiff can manage her own funds and handle her medical care. (R. 21, 889, 896, 1139, 1145, 1151, 1164, 1170).

Despite such consideration of these daily activities, the decision in no way equates such activities with the ability to maintain full employment. *Cynthia A. v. Berryhill*, No. 4:17-4319, 2019 WL 7421964 at *6 (C.D. Ill. Feb. 8, 2019) (finding no error where ALJ considered activities of daily living, but did not equate those activities with her ability to maintain employment). Instead, the ALJ's consideration of daily activities was one factor in consideration of the totality of the evidence. *See Burmester*, 920 F.3d at 510; *Alvarado v. Colvin*, 836 F.3d 744, 750 (7th Cir. 2016) (finding "it is entirely permissible [for an ALJ] to examine all of the evidence, including a claimant's daily activities, to assess whether testimony about the effects of his impairments was credible or exaggerated") (citation and internal quotation omitted).

Finally, consistent with the ALJ's consideration of previous categories of evidence in the record, challenging the ALJ's RFC assessment is tantamount to a request of this Court to improperly reweigh or reconsider evidence. Once more, this Court refuses to do so and it will not supplant the findings of the ALJ with its own RFC assessment. *McKinzey*, 641 F.3d at 889.

### B. Substantial evidence supports the ALJ's finding that plaintiff was capable of performing past relevant work

As an initial matter, step four of the sequential analysis, plaintiff has the burden of showing she is unable to perform her past relevant work as she *actually performed* it. *See Bowen*, 482 U.S. at 146 n. 5 (placing burden upon plaintiff to show inability of returning to past relevant work during the period of alleged disability, as was *actually performed* prior to the period of disability); *Wilder*, 22 F.4th at 651 ("The burden of proof is on the

plaintiff at steps one through four, but the burden shifts to the Commissioner at step five").

Here, the ALJ considered the requirements of *Meat Products Laborer* as it was *actually performed* by plaintiff—relying upon her own submissions and testimony given to the agency. (R. 33, 355). Specifically, plaintiff indicated this job involved cutting and pulling entrails out of meat, and that her role did not involve supervising the work of others. (R. 335). The record poses the limitations implicated in this role, or that (while there was standing involved) the maximum amount of weight lifted was 10 pounds with frequently lifting of less than 10 pounds. (R. 335). It was not purported that this job, as plaintiff performed it, involved climbing, stooping, kneeling, crouching, or crawling. (R. 335).

Plaintiff relies upon a *DOT* summary of the role, as well as the meat laborer online job posting advertised from her former employer indicating greater physical requirements. (Doc. 8 at 8–9). However, a claimant is not disabled if she can do her past relevant work as she actually performed it, even if she is unable to do that job as it is typically performed. *See* 20 C.F.R. § 404.1520(b)(2) (a claimant is not disabled if the claimant can do her past relevant work "either as the claimant actually performed it *or* as generally performed in the national economy") (emphasis added). It is irrelevant whether plaintiff was unable to perform the meat laborer job as it was *typically* performed, how it was described by *DOT*, or how it was previously advertised by her prior employer.

It is, therefore, reasonable that—with the benefit the record evidence and the testimony provided from the impartial VE—the ALJ would make this finding on this past relevant role as it was *actually – not typically—performed*.

Moreover, identical to the RFC formulation as outlined previously, it is not this Court's place to second-guess the ALJ's determination by reweighing the persuasiveness of the evidence in the record. *Gedatus*, 994 F.3d at 900 (holding a reviewing court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it.").

## IV.    CONCLUSION

Upon review of the filings and applicable law, this Court finds the ALJ applied correct legal standards and supported her decision with substantial evidence in the longitudinal case record.

As to the RFC formulation between steps three and four of the sequential evaluation, the ALJ adequately and articulately considered prior administrative findings, medical evidence, and subjective statements by the plaintiff. Further, at step four of the analysis, the ALJ reasonably determined the plaintiff could perform her past relevant role—as it was *actually performed*— during the period of alleged disability. The ALJ grounded this finding in substantial evidence, relying primarily on reliable testimony proffered by the impartial VE at the hearing.

In assessment of the decision and longitudinal case record at each of the sequential stages of evaluation, it is evident to this Court that the ALJ built a "logical bridge" between the available evidence and ultimate disability determination.

For these reasons, this Court hereby recommends: (1) the ALJ's decision be AFFIRMED; and (2) judgment be entered in favor of the Commissioner.

IT IS HEREBY RECOMMENDED.

ENTER: November 4, 2024

/s/ Karen L. McNaught
KAREN L. McNAUGHT
UNITED STATES MAGISTRATE JUDGE